UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARL R. REETZ & GURRY INVESTMENTS, INC., | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 10-11708-JLT * |
| BIO-FERTILIS, INC., et al., | * * |
| Defendants. | * |

MEMORANDUM

April 6, 2011

TAURO, J.

I.  Introduction

Plaintiffs Carl R. Reetz and Gurry Investments, Inc. ("Gurry") bring this suit against Defendants for alleged improprieties connected with a failed purchase of Hydrolysate Company of America LLC ("HCA") by Defendant Bio-Fertilis, Inc. (collectively with Defendant Bio-Fertilis Manufacturing, Inc., "Bio-Fertilis"). Presently at issue is Defendants' Motion to Dismiss Amended Verified Complaint [#30]. For the following reasons, the Motion is ALLOWED.

II.  Background[1]

In 1998, Plaintiff Reetz became involved in the development of a process to use fish offal

---

[1] Because the issues analyzed here arise in the context of a Motion to Dismiss, this court presents the facts as they are related in Plaintiffs' Amended Complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiffs, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).
Additionally, this court does not address here Defendants' counterclaims. Cf. Answer, Affirmative Defenses & Countercls. Def. Edward Zybura [#8]; Answer, Affirmative Defenses, Countercls. & Jury Demand of Def. Bio-Fertilis, Inc. [#12].

to produce completely organic fertilizer.[2] In January 2000, Reetz established the plaintiff organization, Gurry, of which Reetz is the president and chief operating officer.[3]

In 2003, Gurry, Defendant Zybura, and Consolidated Catfish Companies, LLC ("CCC") of Isola, Mississippi signed a letter of intent to form HCA.[4] The letter of intent contained a provision that made Mississippi law the governing law.[5] At that time, Gurry owned 45% of HCA; CCC owned 45% of HCA; and Zybura owned 10% of HCA.[6] The stated purpose of the parties to the letter was "to own and operate the business of processing catfish gurry into usable agricultural fertilizer, animal feed additives, and marketable fish oils."[7] The letter provided that Gurry would retain all proprietary rights to the process of processing fish gurry into protein-rich products through an organic process known as hydrolysis.[8] The products, developed under the trademarks "Multi Bloom" and "Mega Green," were first sold at the New England Flower Show in Boston, Massachusetts in March 2004 and are now sold nationally.[9]

---

[2] Am. Verified Compl. ¶ 7 [#28] [hereinafter Am. Compl.].

[3] Am. Compl. ¶ 8 [#28].

[4] Am. Compl. ¶ 9 [#28]. Although the Amended Complaint refers to this letter as a "joint venture," this court is not persuaded that the letter constitutes a joint venture or, indeed, any kind of contract. Cf. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (explaining that a court need not "accept as true a legal conclusion couched as a factual allegation").

[5] See Exs. Am. Verified Compl., 7 [#29] ("This Letter of Intent . . . shall be governed and construed in accordance with the laws of the State of Mississippi . . . .").

[6] Am. Compl. ¶ 10 [#28].

[7] Am. Compl. ¶ 11 [#28].

[8] Am. Compl. ¶ 12 [#28].

[9] Am. Compl. ¶ 13 [#28].

In 2009, Bio-Fertilis expressed interest in acquiring HCA.[10] Bio-Fertilis was "headed by" David Haig and Defendant Changanaqui.[11] No agreement was ever reached, and all negotiations ceased in November 2009.[12] But during the course of these negotiations, Zybura shared proprietary information with Haig and Changanaqui.[13]

Reetz, on behalf of himself and Gurry, "signed certain documents to complete the transaction," under which Plaintiffs were to receive $900,000 "in return for the use of his Intellectual Property by Bio-Fertilis and Zybura."[14] Reetz forwarded these documents to Bio-Fertilis and Zybura, but those Defendants never returned the documents to Reetz.[15]

In June 2009, Reetz learned that Zybura had claimed that "he owned Reetz and Gurry's Intellectual Property" and that Zybura "claimed that he developed Multi Bloom."[16]

In February 2010, Zybura announced his resignation from HCA and became director of Bio-Fertilis.[17]

---

[10] Am. Compl. ¶ 14 [#28]; cf. Am. Compl. ¶ 26 [#28]. Throughout the Amended Complaint, Plaintiff refers to both Bio-Fertilis Defendants as a single entity. See Am. Compl. ¶ 3 [#28].
Moreover, the Amended Complaint states that "negotiations started" among Plaintiffs, Zybura, Haig, and Changanaqui in "May of 2008." Am. Compl. ¶ 15 [#28]. This court assumes that Plaintiffs have made a scrivener's error but does not know which date is correct.

[11] Am. Compl. ¶ 14 [#28].

[12] Am. Compl. ¶ 15 [#28].

[13] Am. Compl. ¶ 16 [#28].

[14] Am. Compl. ¶ 17 [#28].

[15] Am. Compl. ¶¶ 17–18 [#28].

[16] Am. Compl. ¶¶ 19–20 [#28] (internal quotation marks omitted).

[17] Am. Compl. ¶ 23 [#28].

Zybura, Changanaqui, and Bio-Fertilis have entered into a contract with a company in China to produce 4.6 million gallons of organic fertilizer from fish offal.[18] This information was withheld from Plaintiffs so that Defendants would not have to share the proceeds of this lucrative contract.[19]

Additionally, Defendants purchased two 8500-gallon tanks for use in the production of fish fertilizer from J.L. Mercer Company, the same company from whom Reetz purchased "the original equipment."[20]

Plaintiffs demand that Defendants be enjoined from producing and/or selling organic fertilizer produced from fish offal.[21] Plaintiffs seek damages for attorney fees and costs and "all profits and advantages" Defendants received by using Plaintiffs' "Intellectual Property and/or Trade Secrets."[22]

III.  Discussion

A district court may exercise authority over a defendant on the basis of either general or specific jurisdiction.[23] General jurisdiction exists if "'the defendant has engaged in "continuous

---

[18] Am. Compl. ¶ 24 [#28].

[19] Am. Compl. ¶ 24 [#28].

[20] Am. Compl. ¶ 25 [#28]. The Amended Complaint does not define "the original equipment."

[21] Am. Compl. ¶ 38(a)–(b) [#28].

[22] Am. Compl. ¶ 38(c)–(d) [#28].

[23] Brown Rudnick Berlack Israels LLP v. Brooks, 311 F. Supp. 2d 131, 132 (D. Mass. 2004) (Tauro, J.) (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

and systematic activity" in the forum, even if the activity is unrelated to the suit.'"[24] Alternatively, to establish personal jurisdiction by way of specific jurisdiction, a plaintiff must show both that the Massachusetts long-arm statute[25] grants jurisdiction over the defendant and that "'the exercise of jurisdiction under the statute is consistent with the [United States C]onstitution.'"[26] A plaintiff

---

[24] Id. at 133 (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)).

[25] G.L. ch. 223A, § 3. The statute provides, in relevant part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
(a) transacting any business in this commonwealth;
(b) contracting to supply services or things in this commonwealth; . . .
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .
Id.; see Droukas v. Divers Training Acad., Inc., 375 Mass. 149, 153–54 (1978) (holding that the defendant's contacts were insufficient under the Massachusetts long-arm statute "where the defendant's only contacts with the Commonwealth consisted of the affirmance of a contract and the making of partial payments pursuant to the contract through the mails"); "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 444–45 (1972) (holding that the defendant's contacts with Massachusetts were insufficient where the contacts "were in the nature of affirming a contract and making payments through the mail").

[26] Brown Rudnick, 311 F. Supp. 2d at 133 (alteration in original) (quoting Daynard, 290 F.3d at 52); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("[D]ue process requires[, inter alia, that] . . . [a defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))); see also Plunkett v. Valhalla Ins. Servs., Inc., 409 F. Supp. 2d 39, 42 (D. Mass. 2006) ("In order to obtain specific personal jurisdiction in this case, the plaintiff must demonstrate 1) the Massachusetts long-arm statute . . . grants jurisdiction over each defendant and 2) the exercise of jurisdiction comports with Constitutional [sic] Due Process." (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)); A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 42 (D. Mass. 1990) ("[A] plaintiff must show not only that the Long Arm Statute applies but that its application comports with due process." (citing Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (Tauro, J.); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979)).

5

"'may not rely on unsupported allegations in [the] pleadings, but [is] obliged to adduce evidence of specific facts' sufficient to justify the exercise of jurisdiction over the named defendants, including evidence outside the complaint."[27]

Here, this court does not have authority over Defendants on the basis of either general or specific personal jurisdiction. No general jurisdiction exists because none of the Defendants has engaged in "continuous and systematic activity"[28] in Massachusetts, nor have Plaintiffs so alleged.

No specific personal jurisdiction exists because none of the required elements under the Massachusetts long-arm statute are present in the Amended Complaint. Because Plaintiffs do not allege that any of the acts occurred in Massachusetts, Defendants have not "transact[ed] any business in this commonwealth."[29] The only document that could plausibly be a "contract" alleged in the Amended Complaint is the letter of intent. Although Plaintiffs call the letter of intent a "joint venture agreement," this court is not persuaded that the letter is a contract.[30] Moreover, even if the letter did constitute a contract, the document concerns a limited liability company established in Mississippi and governed by Mississippi law.[31] Finally, Plaintiffs cannot rely on the catch-all "general jurisdiction" provision in the long-arm statute because the Amended

---

[27] Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 208 (D. Mass. 2010) (Tauro, J.) (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)).

[28] Brown Rudnick, 311 F. Supp. 2d at 133 (quoting Daynard, 290 F.3d at 51).

[29] G.L. ch. 223A, § 3(a).

[30] Cf. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (holding that a court need not "accept as true a legal conclusion couched as a factual allegation").

[31] See supra note 5 and accompanying text.

Complaint is silent on whether any of Defendants (1) regularly conduct or solicit business in Massachusetts; (2) engage in some other persistent course of conduct in Massachusetts; or (3) derive substantial revenue from goods used or consumed or services rendered in Massachusetts.[32]

Indeed, Defendants are not alleged to have any contacts with Massachusetts, much less "minimum contacts" sufficient to satisfy federal due process requirements.[33] For these reasons, the Amended Complaint is dismissed.

IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Amended Verified Complaint [#30] is ALLOWED.

AN ORDER HAS ISSUED.

                                                            /s/ Joseph L. Tauro
                                                           United States District Judge

---

[32] See G.L. ch. 223A, § 3(d).

[33] Int'l Shoe, 326 U.S. at 316. In addition, although Defendants filed an Answer [#12] to the Complaint and asserted counterclaims against Plaintiffs in the Answer, Defendants have not impliedly consented to personal jurisdiction. Defendants raised the issue of lack of jurisdiction in both their Answer, see Answer, 7 [#12], and their Motion to Dismiss, see Mem. Law Supp. Defs.' Mot. Dismiss Am. Compl., 18–20 [#31]; Gen. Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 24 (1st Cir. 1991) (declining to treat counterclaims as waivers of jurisdictional objections (citing Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1233 & n.2 (1st Cir. 1991))); Media Duplication Servs., 928 F.2d at 1233 & n.2 (holding that the defendant had not waived its defense of lack of personal jurisdiction because it had raised the issue in its motion to dismiss and in its answer).